UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ADRIAN BAILEY,

                              Plaintiff,


                                                            **Hon. Hugh B. Scott**

                                                            03CV749

                              v.                            **Report &
                                                            Recommendation**




WALGREEN CO., et al.,

                              Defendants.


        Before the Court are the parties' respective motions for summary judgment (Docket Nos.

42, 50 and 55).



                              **Background**

        The plaintiff, Adrian Bailey ("Bailey") brings this action under 42 U.S.C. §§ 1981, 1982

and 1983 alleging that his Fourth and Fourteenth Amendment rights were violated when he was

taken into custody on January 7, 2002 while shopping at a Walgreen Drug Store at 650 Delaware

Avenue in the City of Buffalo.[1]   Also named as defendants are: the City of Buffalo and Buffalo

---

[1]     Two corporate entities have been identified as defendants in this case: Walgreen Co.
and Walgreen Eastern Co. Inc.  These defendants are referred to collectively as "Walgreen."

Police Officers Marlene Mott and Joanne Patterson.[2]   Walgreen has filed a third-party complaint

asserting a claim against Bison Security of Western New York, a contractor that provided

security personnel utilized at the Walgreen store involved in this case.

Bailey is a professional actor who was in Buffalo performing at Studio Arena Theater.

The claims in this case revolve around events which took place when Bailey, along with a fellow

actor, Justice Pratt ("Pratt"), entered the Walgreen's store in the early morning hours of January

7, 2002.[3]   It is undisputed that as Bailey and Pratt, who are African Americans, entered the

Walgreen's store they were approached by Bruce Schmidt ("Schmidt"), a security guard assigned

at Walgreen's[4], and advised that they would have to "check" their backpacks before they could

continue to shop at the store.   Bailey claims that he did not want to check his bag because it

contained valuable items and Walgreen's did not have a secure system for checking bags.

According to Bailey, he questioned whether Walgreen's had a policy requiring bags to be

checked.   Bailey testified that Schmidt advised him that it was not Walgreen's policy, it was his

(meaning Schmidt's) policy.   According to Bailey, he responded by saying that Schmidt was not

---

[2]   These defendants are referred to collectively herein as "the Municipal Defendants."
The plaintiff has also named at least one "John Doe" as a defendant in this case.

[3]   At their depositions, both Bailey and Pratt testified that after an evening performance
they attended a cast party at the theatre, After the cast party, they went to a local bar with some
of the crew. After some time, they left the bar to return to their apartments which were located in
a building near the Walgreen's store. Bailey testified that he and Pratt were given a ride from the
bar by one of the crew members (Docket No. 43-2 at page 16); Pratt testified that the two men
walked from the bar to the Walgreen's store (Docket No. 43-5 at page 16).  In any event, they
decided to stop at Walgreens before going home.   According to Bailey, they entered Walgreen's
at approximately 2:30 am (Docket No. 43-2 at page 17; Pratt has them entering the store at
somewhere between 1:30 am to 2:00 am. (Docket No. 43-5 at page 13).

[4]   Schmidt is employed by Bison Security of Western New York, Inc.

2

Case 1:03-cv-00749-RJA-HBS   Document 59   Filed 10/03/05   Page 3 of 22
"Mr. Walgreen" and continued shopping. (Docket No. 43-2 at pages 21-23).  In his statement, Schmidt asserts that he advised Bailey that the "store policy" was that everyone must leave their bags at the registers. Bailey refused to comply and stated "No. You're not Mr. Walgreens." According to Schimdt, Bailey repeated this as he walked away.  Schmidt stated that he advised Bailey that "if you are not leaving your bag at the front counter, then you must leave the store." (Docket No. 53-4 at page 2).

Both men refused to check their backpacks and continued shopping.  The exchange between Schmidt and the men was witnessed by Thomas Orel ("Orel"), a Pharmacist then working at the Walgreen's location. Schmidt asked Orel to call the police. In his affidavit, Orel states that he heard Bailey say in a loud voice "You are not Mr. Walgreen" and "I'm going to finish shopping and then leave when I am finished." According to Orel, Bailey walked away from Schmidt, repeating himself. (Docket No. 52-4 at page 3).

It appears that Bailey picked out a few items and approached the checkout where Veronica Alexander ("Alexander") was working as cashier.  The parties dispute what transpired at this time.  According to Alexander,  Buffalo Police Officers, Marlene Mott ("Mott") and Joanne Patterson (Patterson"), approached Bailey and inquired about his reluctance to check his backpack.[5]  According to Mott, Bailey became "loud and confrontational" and "attempted to punch" one of the police officers. (Docket No. 46 at ¶ 12).  The defendants contend that Officer Mott "placed him on the ground" and began to handcuff Bailey.  The defendants further contend

---

[5]   In her affidavit, Alexander states that Mott and Patterson happened to be shopping at the Walgreen's at the time.  The record is unclear as to whether Mott and Patterson were at the store in response to the call for police assistance, or coincidentally shopping at the Walgreen's at the time of the incident.

that Bailey resisted being placed under arrest. (Docket No. 51 at ¶ 8).  Two additional Buffalo

Police Officers, identified as Officers Ronald Jentz and Joseph Ruggerio, entered the store in

response to the pharmacist's call, and assisted in apprehending Bailey.  (Docket No. 46 at ¶ 14;

Docket No. 51 at ¶8).   Bailey was arrested and charged with trespassing and disorderly conduct.

According to the defendants, Bailey was granted an adjournment contemplating dismissal

("ACD") which would result in the dismissal of the charges if he remained arrest free and not re-

enter the Walgreen's store at 650 Delaware Avenue. (Docket No. 51 at ¶ 11).

Bailey claims that white customers who entered the store with bags were not asked to

check their bags while they shopped. Bailey asserts ten claims for relief in this case:

| | |
|---|---|
| Count I | That Officers Mott and Patterson improperly placed plaintiff in handcuffs causing injury, denied plaintiff medical attention, and conspired to illegally confine plaintiff in violation of §§1983, 1985 and 18 U.S.C. §245. |
| Count II | Officers Mott and Patterson committed assault and battery on plaintiff. |
| Count III | That as a result of the defendants' intentional acts, plaintiff suffered physical and mental pain and injury and lost wages.  This appears to be a claim of intentional infliction of emotional distress. |
| Count IV | That Officers Mott and Patterson breached a duty owed to the plaintiff causing plaintiff physical and mental pain. |
| Count V | That the plaintiff identified himself to Officer's Mott and Patterson at 650 Delaware Avenue, notwithstanding that fact the Officers "maliciously identified Plaintiff as 'John Doe #1' on the Buffalo Police Department Arrest Data Report."[6] |
| Count VI | The City of Buffalo recklessly trained, encouraged and allowed Officers Mott and Patterson to disregard plaintiff's rights and set forth and implemented a policy with regard to the detention of accused individuals |

---

[6]  For this infraction, the plaintiff seeks $1,000,000 in damages. (Docket No. 1 at ¶ 38).

4

to deprive such individuals of treatment while in custody in violation of §§1983, 1985 and 18 U.S.C. §245.

Count VII      The City of Buffalo negligently and improperly trained Officers Mott and Patterson with respect to the arrest and treatment of individuals while in custody.  This appears to be a state negligence claim asserted against the City of Buffalo.

Count VIII     Walgreen's agents falsely imprisoned the plaintiff and maliciously accused the plaintiff of trespassing and disorderly conduct.

Count IX       The defendants denied the plaintiff the opportunity to complete his intended purchase because of his race in violation of §1981 and 1982.

Count X        The defendants imposed conditions upon the plaintiff, who is black, that they did not impose upon white patrons in violation of unspecified federal and state laws.

Discovery has been completed in this case and the defendants respectively move for summary judgment.[7]

**Summary Judgment**

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d. 351 (2nd Cir. 2003); Fed.R.Civ.P. 56(c).   The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence

---

[7]  Walgreen's has filed a Third-Party Complaint asserting a claim against Bison Security of Western New York, Schmidt's employer.  Bison has articulated a desire to file a dispositive motion to dismiss the third-party claim should Walgreen's motion for summary judgment be denied.

in the light most favorable to, and draw all inferences in favor of, the non-movant. <u>Ford</u>, 316 F.3d. at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' " <u>Lazard Freres & Co. v. Protective Life Ins. Co.</u>, 108 F.3d 1531, 1535 (2d Cir.1997) (quoting <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248, (1986)).  While the moving party must demonstrate the absence of any genuine factual dispute, (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts... . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87(1986); <u>McCarthy v. American Intern. Group, Inc.</u>, 283 F.3d 121 (2d Cir. 2002); <u>Marvel Characters v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir.2002).

**Claims under §1983**

In his first cause of action, Bailey asserts that his civil rights have been violated under 42 U.S.C. §1983.   A claim brought under §1983 has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendants' actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges. See <u>Annis v. County of Westchester</u>, 136 F.3d 239, 245 (2d. Cir. 1998); <u>Eagleston v. Guido</u>, 41 F.3d 865, 872 (2d Cir.1994).  There is no dispute that the defendant police officers in this case were acting under the color of state law when they arrested Bailey.  The plaintiff asserts that his constitutional  rights were violated in that the police allegedly used excessive force by tightening handcuffs around his wrists causing injury.  Bailey also suggests the defendants delayed

providing medical attention relating to this injury. Finally, Bailey asserts that the defendants'

conduct violated his right to be free from illegal confinement and imprisonment.  (Docket No. 1

at ¶27).[8]

Excessive Force / Medical Care

Typically, a claim of excessive force arising in the context of an arrest is governed by the

Fourth Amendment "reasonableness" standard. Nimely v. City of New York, 414 F.3d 381, 390

(2d Cir. 2005) citing Graham v. Connor, 490 U.S. 386, 395 (1989); see also Brown v. Doe, 2

F.3d 1236, 1242 n. 1 (2d Cir.1993) ("Where ... the excessive force claim arises in the context of

an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking

---

[8]    Bailey's first cause of action also purports to assert a claim pursuant to 42 U.S.C.
§1985.  To prevail on a § 1985(3) claim, a plaintiff must prove that the defendants: (1) engaged
in a conspiracy; (2) for the purpose of depriving him or her of equal protection, or equal
privileges and immunities under the law; (3) acted in furtherance of the conspiracy; (4) deprived
the plaintiff of the exercise of any right or privilege of a citizen of the United States; and (5) were
motivated by discriminatory animus. New York State Nat'l Org. for Women v. Terry, 886 F.2d
1339, 1358 (2d Cir.1989), cert. denied, 495 U.S. 947 (1990).  To maintain such a claim, a
plaintiff  "must provide some factual basis supporting a meeting of the minds, such that
defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v.
Goord,  340 F.3d 105, 110 -111 (2d Cir. 2003) quoting  Romer v. Morgenthau, 119 F.Supp.2d
346, 363 (S.D.N.Y.2000)(citations omitted).   The Court notes that in the instant case, as in
Webb, the plaintiff has not alleged, except in the most conclusory fashion, that any such meeting
of the minds occurred among any or all of the defendants. Webb, 340 F.3d. at 110-111; see also
Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir.1997) (dismissal of "conclusory, vague or
general allegations of conspiracy to deprive a person of constitutional rights" is proper). The
defendants moving papers do not address this claim.
        Bailey's first cause of action also cites 18 U.S.C. §245 as the source of his rights
underlying the §1983 claim. The Court notes that §245 is a criminal statute for which no private
right of action exists. Dugar v. Coughlin, 613 F.Supp. 849, 852 (S.D.N.Y.1985); John's
Insulation, Inc. v. Siska Const. Co., Inc.,  774 F.Supp. 156, 163 (S.D.N.Y.,1991). The
defendant's moving papers do not address this claim.

the protections of the Fourth Amendment. The Due Process Clause governs claims arising in the

pre-trial detention context. After conviction, the Eighth Amendment serves as the primary source

of substantive protection ... in cases ... where the deliberate use of force is challenged as

excessive and unjustified." (internal citations and quotation marks omitted)).   In the instant case,

the plaintiff cites to the Fifth and Fourteenth Amendment as the basis for the allegedly offended

constitutional right. (Docket No. 1 at ¶¶ 28).   Arguably, some of the plaintiff's injuries may be

considered to have occurred during pre-trial detention and thus, are subject to Fifth and

Fourteenth Amendment due process protection.   In any event, read liberally as the Court must,

the complaint states a claim of excessive force under §1983.

   With respect to the plaintiff's claim of inadequate medical aid, the Supreme Court has not

defined the standard to be applied to claims arising while in pretrial detention. In this regard, the

Second Circuit has held:

> The rights of one who has not been convicted are protected by the
> Due Process Clause; and while the Supreme Court has not
> precisely limned the duties of a custodial official under the Due
> Process Clause to provide needed medical treatment to a pretrial
> detainee, it is plain that an unconvicted detainee's rights are at least
> as great as those of a convicted prisoner. ... Thus, the official
> custodian of a pretrial detainee may be found liable for violating
> the detainee's due process rights if the official denied treatment
> needed to remedy a serious medical condition and did so because
> of his deliberate indifference to that need. ... Deliberate
> indifference, in this context, may be shown by evidence that the
> official acted with reckless disregard for the substantial risk posed
> by the detainee's serious medical condition. ... Thus, in order to
> establish deliberate indifference, a plaintiff must show "something
> more than mere negligence"; but proof of intent is not required, for
> the deliberate-indifference standard "is satisfied by something less
> than acts or omissions for the very purpose of causing harm or with
> knowledge that harm will result."

Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996)(Citations omitted). See also  City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983) (due process rights of a pretrial detainee "are at least as great as the Eighth Amendment protections available to a convicted prisoner"). See also, Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir. 1991)(same).  It is clear that the plaintiff must show he sustained a significant injury as a result of defendant's conduct in order to prevail under the Fourteenth Amendment's Due Process Clause. Lewis v. Washington, 1996 WL 706916, *3 (S.D.N.Y.,1996) (citations omitted).[9]

In support of his claim, Bailey has submitted medical records in the form of a report from Dr. Michael J. Battaglia of the Buffalo Medical Group which states that Bailey suffered diminished sensibility in the radial distribution of both upper extremities. (Docket No. 54-4 at page 2).  With respect to Bailey's injury, Dr. Battaglia states:

> In my opinion, Mr. Bailey is suffering from bilateral radial sensory neuropathies and bilateral ulnar neuropathies in this case due to tight fitting handcuffs (handcuff neuropathy).  His prognosis is probably good, although only time will tell the degree of recovery he will make.

(Docket No. 54-4 at page 2).

Initially, the Court notes that a nerve injury to the plaintiff's wrists is sufficient to satisfy the "serious injury" requirement with respect to such claims. In Davidson v. Flynn, 32 F.3d 27 (2d Cir. 1994), the Second Circuit held that pain due to tightness of restraints and delay in providing medical care were sufficient to maintain Eighth Amendment excessive force claim.  If

---

[9]   The legal memoranda submitted by the parties in support of the respective motions  – which appear to seek summary judgement with respect to this claim -- do not address the question of what standard is to be applied in this case.

such allegations are sufficient to support an Eighth Amendment claim, they must be sufficient to

support a claim under the arguably more protective standard applicable to those in pre-trial

detention. See Kopec v. Tate, 361 F.3d 772 (3d Cir. 2004)(officer's action in placing excessively

tight handcuffs on plaintiff and failing to respond for 10 minutes to plaintiff's pleas to loosen

them, resulting in nerve damage, constituted excessive force in violation of Fourth Amendment).

     The parties dispute whether the handcuffs were placed on Bailey too tightly; whether

Bailey complained of the tightness; and the length of time it took to remove the handcuffs.

(Docket No. 52-2 at ¶15; 54-3 at ¶¶5-8).  It is not clear from the record as to which police officer

placed the handcuffs on Bailey.   These questions of fact preclude the entry of summary

judgement with respect to Bailey's claims of  excessive force and medical indifference under

§1983.  The Court cannot conclude that Mott and Patterson are entitled to qualified immunity

with respect to these claims. In general, public officials are entitled to qualified immunity if (1)

their conduct does not violate clearly established constitutional rights, or (2) it was objectively

reasonable for them to believe their acts did not violate those rights. Weyant, 101 F.3d at 857-

858 citing Anderson v. Creighton, 483 U.S. 635, 638-39 (1987). The availability of the defense

depends on whether "a reasonable officer could have believed"  his or her action to be lawful in

light of clearly established law and the information he or she possessed. Hunter v. Bryant, 502

U.S. 224, 227 (1991). Qualified immunity does not protect those who are "plainly incompetent or

those who knowingly violate the law." Hunter, 502 U.S. at 229 quoting Malley v. Briggs, 475

U.S. 335, 341(1986)).  At the time of the events in the present case, the legal principles

governing defendants' conduct and the use of force were well established. As noted above, the

parties dispute as to the extent of force used, whether the plaintiff complained of pain resulting

from the tightness of the handcuffs, and the extent of any injury to the plaintiff.  These same

factual issues preclude determination of whether the officers are entitled to qualified immunity

with respect to these claims. <u>Weyant,</u> 101 F.3d at 857.


    <u>False Arrest & Imprisonment</u>

       The Municipal Defendants assert that the plaintiff's claim of false arrest and

imprisonment must be dismissed inasmuch as probable cause existed to support the plaintiff's

arrest for trespassing and disorderly conduct. In addition, the defendants assert that the individual

officers are entitled to qualified immunity with respect to these claims. (Docket No. 52-1 at page

4).

       To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that

"the defendant intentionally confined him without his consent and without justification." <u>Weyant</u>,

101 F.3d at 852. Because probable cause to arrest constitutes justification, there can be no claim

for false arrest where the arresting officer had probable cause to arrest the plaintiff. <u>Id</u>. Probable

cause to arrest exists when the arresting officer has "knowledge or reasonably trustworthy

information of facts and circumstances that are sufficient to warrant a person of reasonable

caution in the belief that the person to be arrested has committed or is committing a crime." <u>Id</u>.

In <u>Escalera v. Lunn</u>,  361 F.3d 737, 743 (2d Cir. 2004), the Second Circuit held that "[e]ven if

probable cause to arrest is ultimately found not to have existed, an arresting officer will still be

entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable

probable cause' to arrest. Arguable probable cause exists 'if either (a) it was objectively

reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable

competence could disagree on whether the probable cause test was met.'" Escalera, 361 F.3d at

743 citing Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991) and Caldarola v.

Calabrese, 298 F.3d 156, 162 (2d Cir.2002) (stating that "in situations where an officer may have

reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless

entitled to qualified immunity.")

        In her affidavit, Mott states that she "witnessed" Bailey being loud and disruptive in the

store. (Docket No. 52-2 at ¶3). Further, Mott testified that she witnessed Schmidt tell Bailey that

he had to check his bag or leave the store. (Docket No. 52-2 at ¶ 4). As discussed above, Schmidt

and Orel provide similar statements. Although Bailey would not admit that Schmidt told him to

leave the store, he did testify at his deposition that it was "possible" that Schmidt asked him to

leave. (Docket No. 43-3 at page 91).  Failure to leave a store after being ordered to do so by an

agent of the store operator can constitute criminal trespass under New York law. New York State

Penal Law §140.05;  People v. Wolf, 63 Misc.2d 178, 312 N.Y.S.2d 721 (Suffolk Co. 1970).

"Officers have probable cause to arrest if they receive "information from some person-- normally

the putative victim or eyewitness--who it seems reasonable to believe is telling the truth."

Thomas v. Culberg, 741 F.Supp. 77 (S.D.N.Y.1990) (quoting Daniels v. United States, 393 F.2d

359, 361 (D.C.Cir.1968)); see also Johnson v. City of New York,  940 F.Supp. 631, 636

(S.D.N.Y.,1996).   It was objectively reasonable for the officer to believe that probable cause

existed, or that officers of reasonable competence could disagree on whether the probable cause

test was met. Robison v. Via, 821 F.2d 913, 920-21 (2d Cir.1987). Under the circumstances

present in this case, arguable probable cause, if not actual probable cause, existed to arrest Bailey for trespassing.[10]

To the extent that the plaintiff's complaint seeks to assert a claim of malicious prosecution, it must also fail.  Under New York law, to maintain a claim of malicious prosecution, a plaintiff must, among other things, establish that the criminal proceedings terminated in favor of the accused.  It is well-settled that an individual granted an ACD cannot maintain a claim of malicious prosecution.  Johnson v. Bax, 63 F.3d 154 (2d Cir.  1995).

In light of the above, the defendants' motion for summary judgement should be denied to the extent it seeks dismissal of the plaintiff's claims of excessive force and failure to provide medical care; but granted to the extent the first cause of action asserts claims of false arrest, imprisonment and malicious prosecution.

**Assault & Battery**

The plaintiff asserts a state law claim of assault and battery against Officers Mott and Patterson.  (Docket No. 1, Second Cause of Action, §§29-30). The Municipal Defendants assert that the plaintiff's state law assault claim must also be dismissed because §35.30 of the New York State Penal Law provides that an arresting officer "may use physical force when and to the extent he reasonably believes such to be necessary to effect the arrest."  (Docket No. 52-1 at page 8).  The reasonableness of the use of force pursuant to a §35.30 defense is typically a question to be presented to a jury. Johnson v. City of New York,  940 F.Supp. 631, 639

---

[10]     Count VIII of the Complaint sets for a separate claim of false arrest and imprisonment under state law.  This claim must also fail for the reasons stated herein.

(S.D.N.Y.,1996)(assault claim survived notwithstanding grant of qualified immunity with respect to excessive force claim).

To the extent the defendants seek summary judgement with respect to this claim, the motion should be denied.

**Intentional Infliction of Emotional Distress**

In Count III of the Complaint, the plaintiff asserts that the defendants conduct constituted intentional infliction of emotional distress ["IIED"].  To maintain a claim of IIED under New York law, the plaintiff must establish "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir.1996) (citing Howell v. New York Post Co., 81 N.Y.2d 115 (1993)). In Howell, the New York Court of Appeals noted that "the requirements of the rule are rigorous, and difficult to satisfy"; that "of the intentional infliction of emotional distress claims considered by [the New York Court of Appeals], every one has failed because the alleged conduct was not sufficiently outrageous"; and that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell, 81 N.Y.2d at 122.

The New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available. Fischer v. Maloney, 43 N.Y.2d 553 (1978). This rule has been consistently applied by lower state courts and federal courts applying New York law.  It has been held that in New York, "intentional infliction of

emotional distress is a theory of recovery that is to be invoked only as a last resort," when traditional tort remedies are unavailable. See EEOC v. Die Fliedermaus, L.L.C., 77 F.Supp.2d 460, 472 (S.D.N.Y.1999) (quoting McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 256 A.D.2d 269 (1st Dep't 1998)). Accordingly, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." Hansel v. Sheridan, 991 F.Supp. 69, 75 (N.D.N.Y.1998).

In the instant case, the defendants' conduct underlying this claim falls within the ambit of Bailey's §1983 excessive force and state law assault claims. Universal Calvary Church v. City of New York, 2000 WL 1745048, at *12 (S.D.N.Y. 2000) ("Plaintiffs' claims for intentional infliction of emotional distress are subsumed under their excessive force, assault and battery, and unlawful imprisonment claims."); see also Campoverde v. Sony Pictures Entertainment, 2002 WL 31163804, *12 (S.D.N.Y.,2002).

The Court notes that the plaintiff's motions papers do not respond to the defendants' arguments seeking dismissal of this claim. Based on the above, the defendants' motion for summary judgement with respect to plaintiff's IIED claim should be granted.


**Failure to Train / Monell Claim**

Count VI of the Complaint alleges a claim against the City of Buffalo for failing to properly train its police officers in the use of force. The Supreme Court has held that a municipality will be liable for inadequate training or supervision of its employees "only where the failure to train amounts to deliberate indifference to the rights" of those with whom municipal employees will come into contact. City of Canton v. Harris, 489 U.S. 378, 388 (1989). The

Second Circuit set forth the following three-part test for determining whether a municipality's failure to train or supervise rises to the level of deliberate indifference:  First, the plaintiff must show that a policymaker knows "to a moral certainty" that her employees will confront a given situation.... Thus, a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation.... [Third,] the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. Walker v. City of New York, 974 F.2d 293, 297 (2d Cir.1992) (citations omitted). However, to defeat a motion for summary judgment on a § 1983 claim, a plaintiff must do more than "simpl[y] recit[e] ... a failure to train municipal employees." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir.1993). A plaintiff must produce "some evidence that policymakers were aware of a pattern of [unconstitutional conduct] but failed to [respond]." Walker, 974 F.2d at 300.

In the instant case, the plaintiff has set forth only conclusory allegations of a failure to train.  (Docket No. 1, Count VI, ¶¶39-42).   The Court notes that the plaintiff's papers in response to the instant motion do not address the defendants' arguments with respect to this claim.  Based on the above, the motion for summary judgement seeking dismissal of the plaintiff's claim based upon a failure to train should be granted.

To the extent that Bailey's allegations could be construed to assert a claim against the City of Buffalo under Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978) it must also be dismissed. It is well established that a municipality may not be held

16

liable under § 1983 for alleged unconstitutional actions by its employees below the policemaking

level solely upon the basis of respondeat superior. Monell, 436 U.S. at 694. In order to hold a

municipality liable under § 1983 for the unconstitutional acts of its employees, the plaintiff must

plead and prove that the violation of constitutional rights resulted from a municipal custom or

policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 478-83 (1986). Absent a showing of a

causal link between an official policy or custom and the plaintiff's injury, Monell prohibits a

finding of liability against the City. Monell, 436 U.S. at 694 n. 58.

Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior

are insufficient to establish a Monell claim, absent evidence to support such an allegation. Young

v. County of Fulton, 160 F.3d 899, 903-04 (2d Cir.1998) (affirming dismissal of plaintiff's

Monell claim because "her allegations failed to establish that she suffered any deprivation of her

rights by reason of an official policy, custom, or practice" of the municipal defendants); Oparaji

v. City of New York, 1998 WL 432988 at *1 (2d Cir. 1998) ("[I]t is clear that the district court

properly dismissed [plaintiff's] § 1983 claims. [Plaintiff] does not provide any facts in support of

his conclusory allegation of the City's failure to properly train and supervise police officers

amounts to a custom or policy, or that this custom or policy caused [plaintiff's] injuries."); 

Dwares v. City of New York, 985 F.2d at 100 ("The mere assertion ... that a municipality has ... a

custom or policy [that violates plaintiff's constitutional rights] is insufficient in the absences of

allegations of fact tending to support, at least circumstantially, such an inference.... Similarly, the

simple recitation that there was a failure to train municipal employees does not suffice to allege

that a municipal custom or policy caused the plaintiff's injury."); Smith v. Montefiore Med. Ctr.,

22 F.Supp.2d at 283 (summary judgment for defendants on Monell claim because "bare

allegations of ... a policy or custom, without any supporting evidence, do not constitute ...

proof"); Woo v. City of New York, 1996 WL 457337 at *5 ("Conclusory allegations by a

plaintiff of a municipality's pattern or policy of unconstitutional behavior are insufficient to

establish a Monell claim, absent the production of evidence to back up such an allegation.");

Bruno v. City of New York, 89 Civ. 6661, 1992 WL 84471 at *2 (S.D.N.Y. April 15,

1992)(plaintiff's conclusory allegation that "constitutional violations were 'pursuant to a custom,

policy or practice of the City of New York Police Department' " is insufficient to state a Monell

claim).

    In the instant case, the plaintiff's complaint sets forth only conclusory allegations

regarding negligent training.  The Court notes that the plaintiff's papers responding to the instant

motion do not address this claim.  Based on the above, to the extent that the plaintiff asserts a

claim under Monell, it is recommended that the defendants' motion for summary judgement be

granted.


**Claims Under §1981 and §1982**

    In Counts IX and X of the Complaint, Bailey asserts that his rights under 42 U.S.C.

§§1981 and 1982 were violated when his ability to shop at Walgreen's store was allegedly

interfered with based upon his race.  To make out a prima facie case under §1981[11], the plaintiff's

---

[11]    Section 1981 provides: (a) Statement of equal rights. All persons within the
jurisdiction of the United States shall have the same right in every State and Territory to make
and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all
laws and proceedings for the security of persons and property as is enjoyed by white citizens, and
shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind,
and to no other. (b) "Make and enforce contracts" defined. For purposes of this section, the term
"make and enforce contracts" includes the making, performance, modification, and termination

must allege facts showing that (i) he is a member of a racial minority, (ii) the defendant intended to discriminate based on the plaintiff's race and (iii) the discrimination concerned one or more of the activities enumerated in the statute. See <u>Mian v. Donaldson, Lufkin & Jenrette Securities</u>, 7 F.3d 1085, 1087 (2d Cir.1993).  To state a claim under § 1982[12], the plaintiff must allege with specificity facts sufficient to show or raise a plausible inference of (1) the defendants' racial animus; (2) intentional discrimination; and (3) that the defendants deprived plaintiff of his rights because of his race. Because of the related origins and language of the two sections, they are generally construed in *pari materia*. <u>Tillman v. Wheaton-Haven Recreation Ass'n, Inc</u>., 410 U.S. 431, 440 (1973); <u>Choudhury v. Polytechnic Institute of New York,</u>  735 F.2d 38, 43 (2d. Cir. 1984).  Like claims under §1981, §1982 claims must make clear that the alleged mistreatment was a function of racial animus and intentional discrimination. See <u>Jones v. Mayer Co.</u>, 392 U.S. 409, 436 (1968). Also, and as with §1981, a private employer may be held liable under §1982. <u>Jones</u>, 392 U.S. at 412.  However, to survive summary judgement a plaintiff must do more than recite conclusory or naked allegations of racial discrimination.  <u>Yusuf v. Vassar College</u>, 35 F.3d 709, 713 (2d Cir.  1994).

---

of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. (c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

[12]     Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

Walgreen asserts that the plaintiff has failed to do more than assert, in conclusory fashion, that the fact that he was asked to check his backpack was racially motivated.[13]  However, the record reflects testimony by Pratt to the effect that white shoppers entered the store at the time he and Bailey were in the store but were not asked to check their backpacks.  (Docket No. 53-3 at ¶¶ 6-7).  If the trier of fact were to believe that Walgreen's requested black shoppers to check their bags while shopping, but did not ask white shoppers to check their bags under similar circumstances, a claim may exist under §§1981 and 1982.  Thus, the defendants' motion for summary judgment with respect to the §§1981 and 1982 claims should be denied.

**Other Claims**

In Count IV, the plaintiff asserts that Officers Mott and Patterson breached a duty owed to him.  The plaintiff does not identify the nature or source of this duty.  The defendants' moving papers to not address this claim. Count V of the Complaint alleges that Officers Mott and Patterson identified Bailey as "John Doe" in the arrest report notwithstanding the fact that they were allegedly aware of his actual identification.  The plaintiff does not state any basis to conclude that such conduct is actionable. Again, the defendants' moving papers do not address this claim.  Thus, the Court does will not address these claims further.

---

[13]    The defendants do not challenge the plaintiff's ability to meet the other statutory requirements.

**Conclusion**

Based on the above, it is recommended that the defendants' respective motions for summary judgement be granted in part and denied in part consistent with the above; and that the plaintiff's motion for summary judgement be denied in its entirety.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not,

presented to the Magistrate Judge in the first instance.  See <u>Patterson-Leitch Co. Inc. v.</u>

<u>Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written

objections shall specifically identify the portions of the proposed findings and recommendations

to which objection is made and the basis for such objection and shall be supported by legal

authority."  **<u>Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District</u>**

**<u>Court's refusal to consider the objection.</u>**

So Ordered.


                                        s/Hon. Hugh B. Scott
                                        United States Magistrate Judge


Buffalo, New York
October 3,  2005